# UNITED STATES DISTRICT COURT
# DISTRICT FOR CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : 3:07cr165(MRK) |
| | : |
| SEAN ROGET | : |

## RULING AND ORDER

Following his guilty plea on July 23, 2007, to one count of Bank Fraud in violation of 18 U.S.C. § 1344, Defendant Sean Roget was sentenced on November 13, 2007 to 37 months imprisonment and three years of supervised release. *See* Judgment of Sentence [doc. # 26]. Mr. Roget did not appeal his conviction or sentence. On August 19, 2008, Mr. Roget filed a *pro se* motion to set aside his sentence to the extent it was derived in a manner that violated the Equal Protection Clause of the U.S. Constitution. *See* Motion to Set Aside Sentence [doc. # 27]. The gist of Mr. Roget's complaint is that because he is a deportable alien, he will not be placed in a half-way house toward the end of his sentence, will not be eligible to serve his sentence in a minimum security facility, and will likely be further detained by immigration officials after serving his sentence and before being deported. As a consequence, Mr. Roget believes he will serve a longer sentence under more severe conditions than other similarly situated, non-alien prisoners, in violation of the Equal Protection Clause. For the same reasons, he requests a "downward departure" from his Sentencing Guidelines' calculations. The Government filed a memorandum in opposition to the Motion to Set Aside Sentence and the period for reply has passed without a reply from Mr. Roget.

Having carefully considered Mr. Roget's motion, the Court DENIES the Motion to Set Aside

Sentence [doc. # 27] for several reasons. For one, there is no statutory basis for the Court to set aside Mr. Roget's sentence as he requests. Rule 35(a) of the *Federal Rules of Criminal Procedure* allows a court to correct a sentence within seven days after sentencing. But Mr. Roget's motion comes far beyond seven days after his sentencing. Rule 35(b) allows the Government under some circumstances to move for a downward departure within one year of sentencing, but here, it is Mr. Roget, and not the Government, who is seeking the departure.

Accordingly, the Court construes Mr. Roget's motion as a petition for a writ of habeas corpus under 28 U.S.C. §§ 2255 or 2241.[1] But even as so construed, there remain problems with Mr. Roget's motion. First, he agreed in his plea agreement that he would neither appeal his sentence nor collaterally attack it in a proceeding under 28 U.S.C. §§ 2255 or 2241. His plea agreement states as follows:

> It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence of imprisonment imposed by the Court if that sentence does not exceed 46 months, a five (5) year term of supervised release, a fine of $75,000, and restitution even if the Court imposes such a sentence based on an analysis different from that specified above. The defendant expressly acknowledges that he is knowingly and intelligently waiving his appellate rights.

Plea Agreement [doc. # 14]. The Court's sentence did not exceed 46 months or five years of supervised release.

The Second Circuit has held that a knowing and voluntary waiver of a defendant's right to

---

[1] As the Second Circuit has explained, §§ 2255 and 2241 address different claims: "A petitioner seeking to challenge the legality of the imposition of a sentence by a court may . . . make a claim pursuant to Section 2255 . . . A challenge to the execution of a sentence, however, is properly filed pursuant to Section 2241." *Chamber v. United States*, 106 F.3d 472, 474 (2d Cir. 1997). In this case, there is no need for the Court to decide under which section Mr. Roget moves since his motion is without merit regardless of the section invoked.

appeal is enforceable if the record "clearly demonstrates" that the waiver was knowing and voluntary. As the Second Circuit explained in *United States v. Salcido-Contreras*, 990 F.2d 51 (2d Cir. 1993), "[i]n no circumstance, however, may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." *Id.* at 53; *see also United States v. Morgan,* 406 F.3d 135, 137 (2d Cir. 2005) (defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver"); *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) ("We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into."); *United States v. White*, No. 3:01CR212(CFD), 2005 WL 1489453, at * 2 (D. Conn. June 20, 2005).

Here, before accepting Mr. Roget's plea, the Court placed him under oath and personally addressed him in Court to determine that his plea was knowing and voluntary. Moreover, the Court specifically inquired about Mr. Roget's willingness to enter into the agreement waiving his right to appeal or collaterally attack his sentence. *See* Fed. R. Crim P. 11(b)(1)(N). The Court expressly informed Mr. Roget that ordinarily he could appeal his sentence or collaterally attack it if he was dissatisfied with his sentence for any reason, but that he had agreed to waive his right to do so in his plea agreement. The Court told Mr. Roget he was giving up a valuable right and asked if he had discussed giving up his appeal and collateral-attack rights with his lawyer. Mr. Roget said that he had discussed the subject with his attorney, that he was satisfied with the representation he had received, that he understood his rights, and that he was willing to give them up. Mr. Roget's counsel

3

also responded that he was satisfied that Mr. Roget's waiver of his right to appeal or collaterally attack his sentence was knowing and voluntary. In these circumstances, the Court concludes that Mr. Roget has waived his right to attack his sentence under §§ 2255 or 2241.

Of course, a waiver of the right to appeal or collaterally attack a sentence does not waive a defendant's right to challenge his sentence for ineffective assistance of counsel or prosecutorial misconduct. *See, e.g.*, *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001); *United States v. Ready*, 82 F.3d 551, 555 (2d Cir. 1996); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal"). Mr. Roget's counsel did not make the arguments at sentencing that Mr. Roget now asserts in his motion, so that the Court could construe Mr. Roget's *pro se* motion as challenging the effectiveness of his counsel's representation. But even as so construed, Mr. Roget's motion is without merit.

In *United States v. Restrepo*, 999 F.2d. 640 (2d Cir. 1993), the Second Circuit held that the fact that the defendant would be deported post-release and would suffer other collateral consequences not suffered by United States citizens "was not a permissible basis for [downward] departure" under the Sentencing Guidelines. *Id.* at 641. In that case, the district court found that the defendant would suffer three principal consequences as a result of his alien status. "First, a resident alien convicted of a narcotics offense must be deported unless he is eligible for discretionary relief from deportation." *Id.* at 642. "Second, the court found that due to a policy of the Bureau of Prisons . . . , 'solely because of his status as a deportable alien, the defendant's sentence will be served under circumstances that are more severe than those facing a United States citizen under similar

circumstances." *Id*. (quotations marks omitted).  Specifically, "[u]nder that policy, Restrepo, as a deportable alien, would receive a 'Public Security Factor' designation ... that would render him ineligible (a) to serve his sentence in a minimal security facility, and (b) to serve a part of the last 10% of his sentence in a community custody program such as a halfway house or home confinement. *Id*. at 642-43.  Third, the district court found that because the defendant was a deportable alien, the Immigration and Naturalization Service ("INS") would file a detainer with the Bureau of Prisons that could result in his being incarcerated in an INS facility for an additional period while awaiting the completion of deportation proceedings.  *Id*. at 643.

The Second Circuit held that none of these principal consequences relied upon by the district court, which also encompass Mr. Roget's arguments here, justified a downward departure under the Sentencing Guidelines.  *Id.* at 644.  The Court observed that "the Bureau [of Prisons] need not reassign the prisoner to a halfway house if there is no such unit in his home state, and the absence of such a facility has been held to be an impermissible ground for departure from the Guidelines," and that "disapproval of the Bureau's exercise of its discretion to deny that prisoner reassignment to a minimum-security facility is likewise an inappropriate basis for departure." *Id.* at 645-46.

The Second Circuit has repeatedly reaffirmed the holding in *Restrepo*.  *See United States v. Duque*, No. 06-220-cr, 2007 WL 4315755, at *1 (2d Cir. Dec. 10, 2007) (holding that collateral effects of deportability, for example, "(1) the unavailability of preferred conditions of confinement, [and] (2) the possibility of an additional period of detention pending deportation following the completion of sentence," generally do not justify a departure from the Sentencing Guidelines range); *see also Gumbs v. United States*, No. 06-4708-cr, 2008 WL 2872670, at *2 n.1 (2d Cir. July 24, 2008); *United States v. Wills*, 476 F.3d 103, 107 (2d Cir. 2007) (same); *United States v. Adubofour*,

5

999 F.2d 639, 640 (2d Cir. 1993).[2] Moreover, other district courts in the Circuit have rejected equal protection challenges similar to Mr. Roget's. *See, e.g., Rosario v. United States*, Nos. 05 civ 6096, 07 civ 8260, 2008 WL 1700213 (S.D.N.Y. Apr. 11, 2008); *United States v. Rojas*, Nos. 08 Civ. 75A, 03-cr-34A, 2008 WL 495502, at * 2 (W.D.N.Y. 2008); *see also Perez-Martinez v. United States*, No. 06-10842, 235 Fed. Appx. 228, at *3-4 (5th Cir. 2007) (rejecting a claim that a non-citizen had suffered an equal protection violation because his status as a deportable alien precluded his participation in a drug rehabilitation program, finding that the petitioner "does not show that he is being treated differently than similarly situated persons" or that the restrictions were "irrational").

Finally, even if after *Kimbrough v. United States*, 128 S.Ct. 558 (2007), this Court is free to depart under the Guidelines or impose a non-Guidelines sentence because of the circumstances detailed in Mr. Roget's motion, the court would not have done so in the circumstances of this case. Mr. Roget was found in the United States illegally and convicted in federal court of possession with intent to distribute 500 grams or more of cocaine. For that crime, the judge gave Mr. Roget probation and ordered him deported. Mr. Roget then returned to the United States contrary to the terms of his probation and committed bank fraud, also contrary to the terms of his probation. The bank fraud Mr. Roget committed involved using phony documents, an alias and, the names and identifying information of other people (without their knowledge). Mr. Roget obtained several large automobile loans – as much as $82,000 per loan – between September 2005 and March 2006, and through his scheme, Mr. Roget fraudulently obtained approximately $426,766. The banks lost nearly

---

[2] *Compare United States v. Farouil*, 124 F.3d 838, 847 (7th Cir. 1997) (court may depart because of defendant's status as a deportable alien); *United States v. Charry Cubillos*, 91 F.3d 1342, 1344(9th Cir. 1996) (same), *with United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir. 1993) (deportable alien's status not a ground for departure); *United States v. Mendoza-Lopez*, 7 F.3d 1483, 1487 (10th Cir. 1993) (same).

all of the money they had loaned out to Mr Roget. In these circumstances, the 37-month sentence Mr. Roget received was more than fair and none of the circumstances he details in his motion would have caused the Court to reduce his sentence, as he now requests.

Accordingly, the Court DENIES Mr. Roget's Motion to Set Aside Sentence [doc. # 27].

IT IS SO ORDERED,

/s/    Mark R. Kravitz
United States District Judge

Dated at New Have, Connecticut: **October 17, 2008**